Elliot Gale (Bar #1119904)
egale@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Kent Gardner

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KENT GARDNER<br><br>           Plaintiff,<br><br>  v.<br><br>Experian Information Solutions, Inc.;<br>Equifax Information Services, LLC;<br>Marine Credit Union<br><br>           Defendants. | CASE NO.  2:21-cv-01186<br><br>COMPLAINT FOR DAMAGES:<br><br>1.  Violation of Fair Credit Reporting Act; |

COMES NOW Plaintiff Kent Gardner, an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's account with Marine Credit Union (hereinafter "Marine").
3. Here, Marine continues to report inaccurate and incomplete information regarding Plaintiff's mortgage account.
4. Marine's reporting of the account is wholly incomplete and misleading. Specifically, Marine continues to report the account involved in an active bankruptcy despite the Marine account being paid in full in March of 2019.
5. Such reporting is misleading and adversely impacts Plaintiffs' credit worthiness.
6. Plaintiff's credit reports have been disseminated to third parties since the filing of his chapter 13 case.
7. Plaintiff's credit has also been damaged as a result of the inaccurate and misleading reporting.
8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.
9. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

## JURISDICTION & VENUE

10. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.
11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681
12. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

13. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

14. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

15. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's attempt to improve his FICO Score.

16. In the alternative Plaintiff alleges that each and every Defendants actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

17. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

18. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

19. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

20. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

21. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

22. There are 28 FICO Scores that are commonly used by lenders.

23. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

24. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
25. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
26. There are five key factors that a FICO Score considers: 1) Payment History, 2) Amount of Debt, 3) Length of Credit History 4) New Credit and 5) Credit Mix.
27. Each of the five factors is weighted differently by FICO.
28. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
29. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.
30. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.
31. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.
32. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

### e-OSCAR

33. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

34. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.
35. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**Metro 2**

36. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.
37. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.
38. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
39. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
40. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

41. The CDIA's Metro 2 is accepted by all CRAs.
42. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
43. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
44. The three main credit bureaus helped draft the CRRG.
45. The CRRG is not readily available to the public. It can be purchased online for $229.45.
46. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
47. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
48. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
49. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.
50. All three major CRAs are members of the CDIA
51. The CDIA is on record that they know, understand, and accept mortgages are generally non-dischargeable under 11 U.S.C. §1328(c)(1) and 11 U.S.C. § 1322(b)(5).

**Consumer Information Indicator**

52. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.

6

Case 2:21-cv-01186-LA   Filed 10/13/21   Page 6 of 16   Document 1

53. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

54. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

55. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

56. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

57. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

58. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

59. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

60. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

61. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

62. The CII Metro 2 Code "Q" is used when a bankruptcy plan is complete and will remove prior bankruptcy codes on the account; the CII Q is used on liabilities that are not discharged in bankruptcy (such as a mortgage).

63. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

64. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

**Plaintiff's Dispute**

65. On April 14, 2021 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's creditors after approval of his chapter 13 bankruptcy plan.

66. Plaintiff noticed a delinquent and adverse trade line on his April 14, 2021 credit report where Marine was not reporting complete information regarding a mortgage account, as the Marine account was paid in full in March of 2019.

67. In response, Plaintiff disputed the Marine tradeline with Experian, Equifax, and TransUnion via certified mail on May 11, 2021.

68. Plaintiff's dispute letters specifically put the Defendants on notice that the account should not be listed as included in bankruptcy as the account was paid in full.

69. Plaintiff provided verification that Marine was paid in full. The verification of the payment in full was from Marine itself.

70. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to Marine via an ACDV through e-OSCAR.

71. On June 24, 2021 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the credit Bureaus, Plaintiff ordered a second credit report from Experian, Equifax, and TransUnion for the sole purpose to ensure Plaintiff's account with Marine had in fact been updated.

**Inaccuracy – Marine**

72. Plaintiff was frustrated to see that Defendant Marine did not properly update the account.

73. Marine was still reporting the account as included in bankruptcy despite the account being paid in full.

74. Marine's reporting is inaccurate because Plaintiff paid off the account and did not seek to include it in bankruptcy.

75. Marine's reporting is entirely incomplete, misleading and technically inaccurate.

76. The reporting is incomplete because the report lacks any updates on the account, including reflecting that the account was paid in full in March of 2019.

77. Marine failed to make any updates to the tradeline after it was paid in full.

78. As it stands it appears that Marine continues to report the CII "D" making it appear that Plaintiff continue to be in an active bankruptcy.

79. Plaintiff believes that Marine received a copy of Plaintiff's dispute and continued to report the account as currently included in bankruptcy.

### Willfulness

80. This was not a negligent act by Defendant Marine but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore his credit.

81. Marine's reporting makes Plaintiff appear less credit worthy because the lack of any update on the account makes it appear that Plaintiff did not pay the loan in full and that the account is still subject to a bankruptcy proceeding.

82. Marine knows that its reporting must be accurate and complete.

83. Marine, with knowledge of Plaintiffs' dispute, chose not to update Plaintiff's credit report and instead still reported that the account was subject to a Chapter 13 bankruptcy.

84. Such a scheme directly undermines the integrity of the credit reporting system at large.

85. Marine knew its loan was paid in full as its own records, available to Plaintiff, confirm as much.

### Damages

86. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

87. Marine's inaccurate reporting has been transmitted to third parties since confirmation of Plaintiff's chapter 13 plan. The reporting by Marine has negatively impacted Plaintiff's ability to obtain and rebuild his credit.

88. Marine's reporting has diminished Plaintiff's credit score.

89. The actions of Experian, Equifax, and Marine as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

**FIRST CAUSE OF ACTION**

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants Experian and Equifax)

**Experian Information Solutions, Inc. and Equifax Information Services, LLC – Failure to Assure Credit Reporting Accuracy.**

90. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

91. Experian and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiffs.

92. Had Experian and Equifax maintained reasonable procedures to assure maximum accuracy Experian and Equifax would never have allowed Defendant Marine to report the account as described herein.

93. Marine appears

94. Plaintiff disputed the account and the CRAs still did not fix the issue.

95. Plaintiffs informed Experian and Equifax that the information reported by Marine was incorrect because Plaintiff paid the Marine loan in full and provided verification of such payment to the Experian and Equifax.

96. Instead, the account remains unchanged.

97. As a result of Experian and Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

98. The violations described herein by Experian and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

99. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

100. Such a finding should shock the conscience.

101. When those errors are disputed Equifax and Experian intentionally send consumer disputes to employees who do not live within the continental United States.

102. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.
103. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants Experian and Equifax receive little to no training concerning how to accurately report consumer debt.
104. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)
105. Experian and Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.
106. Experian and Equifax have intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.
107. Experian and Equifax also allowed Marine to report the account with inaccurate information despite specifically being told in the dispute letter why the information Marine was reporting was incorrect.
108. Despite the CRAs having actual knowledge that Plaintiff paid the Marine loan, in full, the Experian and Equifax continued to allow Marine to report the account as included in bankruptcy.
109. As a result, Experian and Equifax are allowing Marine to report in a manner they know is factually and legally inaccurate.
110. Consequently, Defendants Experian and Equifax are liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.
111. In the alternative, Experian and Equifax were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

112. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against All Defendants)

**Marine – Failure to Reinvestigate.**

113. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

114. 15 USC §§ 1681s-2(b) and 1681i-(a)1 prohibit furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

115. Defendant Marine violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

116. The CRAs provided notice to Marine that Plaintiff was disputing the inaccurate and misleading information, but Marine failed to conduct a reasonable investigation of the information as required by the FCRA.

117. Based on Plaintiff's dispute, Marine should have known that its reporting was incomplete as Plaintiff's dispute letters highlighted the problems with the tradeline.

118. The most basic investigation would simply involve reading Plaintiff's dispute letters.

119. Plaintiffs allege Marine did not review well established industry standards for credit reporting.

120. If Marine had reviewed such standards, Marine would have seen its reporting was not in compliance and in accordance with the CRRG and consequently inaccurate and or incomplete.

121. Moreover, had Marine done any investigation whatsoever it would have uncovered that its reporting indicated the account was subject to a bankruptcy proceeding rather than paid in full.

122. The lack of investigation is unreasonable.

123. Plaintiff further alleges that Marine has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian and Equifax – Failure to Reinvestigate Disputed Information.**

124. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

125. After Plaintiff disputed the account mentioned above, Experian and Equifax were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC § 1681i-(a)1.

126. Experian and Equifax failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

127. Experian and Equifax could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Marine account was paid in full in March of 2019.

128. Plaintiff alleges that Experian and Equifax have its own independent duty to conduct a reasonable investigation 15 USC § 1681i-(a)1.

129. Experian and Equifax are not passive entities bound to report whatever information a data furnisher provides.

130. Given the aforementioned, Plaintiffs allege that Experian and Equifax can and do suppress inaccurate information from being reported when data furnishers provide inaccurate information.

131. Experian and Equifax can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from the data furnisher.

132. Experian and Equifax failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

133. Experian and Equifax therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

134. Experian and Equifax intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian and Equifax's general policy is to simply parrot whatever information a data furnisher sends.

135. Such policies and procedures inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

**THIRD CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian and Equifax)

**Experian and Equifax – Failure to Review and Consider All Relevant Information.**

136. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

137. Experian and Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiffs.

138. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

139. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

140. In the alternative Experian and Equifax were negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

141. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian and Equifax)

**Experian and Equifax– Failure to Delete Disputed and Inaccurate Information.**

142. Plaintiff re-alleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

143. Experian and Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

144. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

145. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

146. In the alternative, Experian and Equifax were negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

147. Plaintiff are entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;

5. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: October 13, 2021

*/s/ Elliot Gale*
Elliot Gale
Attorney for Plaintiff